IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETHANNE MILLER,<br><br>             Plaintiff,<br><br>   v.<br><br>TRANS UNION, LLC, et al.,<br><br>             Defendants. | CIVIL ACTION<br>NO. 24-3047 |

**OPINION**

**Slomsky, J.**                                                                                                                    **December 17, 2024**

## I.   INTRODUCTION

This case arises from Defendant Midland Funding LLC's ("Midland") submission of allegedly inaccurate data about a particular account that was posted on Plaintiff Bethanne Miller's credit reports.  The reports were issued by consumer credit reporting agencies Trans Union LLC, Experian, and Equifax.  (Doc. No. 1 ("Compl.") at ¶ 9.)  Pursuant to Federal Rule of Procedure 12(b)(2), Midland moves to dismiss this case for lack of personal jurisdiction.  For reasons described below, the Court lacks personal jurisdiction over Midland.  Therefore, the Motion to Dismiss (Doc. No. 17) will be granted.[1]

## II.   BACKGROUND

Plaintiff Miller is a New Jersey resident who denies that she opened the account at issue; rather she claims that someone else opened it in her name without her authorization.  (Id. at ¶¶ 4,

---

[1]  In granting the Motion, the Court has considered the Complaint (Doc. No. 1), Defendant Midland's Motion to Dismiss (Doc. No. 17), Plaintiff's Response in Opposition (Doc. No. 18), Midland's Reply (Doc. No. 19), and the arguments of counsel for the parties at a hearing on the Motion held on November 25, 2024.

10.)  She further claims that, in violation of 15 U.S.C. § 1681n of the Fair Credit Reporting Act (the "FCRA"), Midland willfully failed to properly investigate the alleged inaccuracy or take steps to remove it from her credit reports.[2]  (Id. at ¶ ¶ 16–17.)  She contends that Midland's wrongful acts have led to her deteriorating credit standing and her weakened ability to obtain credit elsewhere.  (Id. at ¶ 24.)  Plaintiff seeks actual and statutory damages pursuant to 15 U.S.C. §1681n, and attorney's fees and costs of suit pursuant to 15 U.S.C. § 1681o.  (Id. at ¶ 36.)

In the alternative, Plaintiff requests the transfer of this case to the District of New Jersey because "a substantial part of the events or omissions giving rise to the claim, including Plaintiff's injuries, occurred in the District of New Jersey, where the Plaintiff resides."  (Id.)

Defendant Midland is a debt collection agency with a Delaware address.  (Id. at ¶ 8.)  It is incorporated in Delaware and has its headquarters in California.[3]  (See Doc. No. 30-1 at 3, n. 2.) Midland transmits credit data to Trans Union, which is a company engaged in the business of nationwide consumer reporting that Plaintiff claims is domiciled in Pennsylvania.  (Doc. No. 18 at 8.)  Defendant submits that this Court has no personal jurisdiction over it and relies on three recent cases in this District in which personal jurisdiction was based on debt collection companies suing residents, being sued by residents, and having contacts with a third party.  In those cases, the

---

[2]  15 U.S.C. § 1681n provides in relevant part, "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . ."

[3]  See Delaware Dept. of State, Division of Corporations online record search for "Midland Funding, LLC," which Defendants attached to their Motion to Dismiss the Complaint as Exhibit "A;" see also Midland Funding.com, which lists its main office of operations in San Diego, California.  The Court may consider matters of public record on a motion to dismiss. See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

complaints were dismissed for lack of personal jurisdiction because the facts did not support personal jurisdiction over the defendants.[4]  (Doc. No. 17 at 7–8.)

### III.   STANDARD OF REVIEW

Judge Gerald McHugh of this Court has accurately summarized the law on personal jurisdiction and its two prongs—general and specific jurisdiction—as follows:

> After a defendant has raised a challenge to personal jurisdiction pursuant to Federal Rule of Civil Procedure12(b)(2), the burden shifts to the plaintiff to establish the court's jurisdiction over that defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

Greene v. Trans Union LLC, No. CV 21-4446, 2022 WL 267587, at *1 (E.D. Pa. Jan. 28, 2022).

> To exercise general jurisdiction over a defendant, its "affiliations with the State [must be] so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). According to the Supreme Court, the "paradigm" forums for the exercise of general jurisdiction "are the corporation's place of incorporation and its principal place of business." BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017). The Supreme Court has further opined that only in "exceptional" cases will general jurisdiction be found over a foreign corporation that is not headquartered in the forum where the case is brought. Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014). Because of these limiting principles adopted in recent cases, the Third Circuit has concluded that "it is incredibly difficult to establish general jurisdiction over a corporation in a forum other than the place of incorporation or principal place of business." Chavez v. Dole Food Co., Inc., 836 F.3d 205, 223 (3d Cir. 2016) (emphasis in original).

Id.

> To establish specific jurisdiction, a defendant must have "certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). This Circuit has distilled International Shoe's standard, as later refined by other Supreme Court decisions, into a three-part test: "First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, ... the exercise of

---

[4]   The three cases, which are discussed below, are the following: White v. Trans Union, LLC, No. 2:22-CV-02653-JDW, 2022 WL 6768231 (E.D. Pa. Oct. 11, 2022), Greene v. Trans Union LLC, No. CV 21-4446, 2022 WL 267587 (E.D. Pa. Jan. 28, 2022), and Horvei v. Trans Union, LLC, No. CV 22-2101, 2022 WL 3588020 (E.D. Pa. Aug. 22, 2022).

jurisdiction [must] comport with fair play and substantial justice." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). As the Supreme Court has emphasized, the second part of that test requires "a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty., 137 S. Ct. 1773, 1781 (2017).

Id. at *2.

### IV. ANALYSIS

#### A. This Court Does Not Have General Jurisdiction Over Defendant Midland

As noted above, general jurisdiction can exist over a nonresident party when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919. Here, Midland is a nonresident of Pennsylvania because it is incorporated in Delaware, operates from a Delaware address, and has its headquarters in California. Thus, the "paradigm" forum for suing Midland would be either Delaware or California, not Pennsylvania. Realizing this impediment, Plaintiff argues that Midland's debt collecting in states including Pennsylvania amounts to "contacts with the forum [that] are continuous and systematic, whether or not the contacts relate to the litigation." (Doc. No. 18 at 7.) More specifically, Plaintiff asserts that the Court has general jurisdiction because: (1) Midland has sued many Pennsylvania residents in efforts to collect unpaid debts; (2) Midland has been sued by many residents of Pennsylvania; and (3) Midland has had several contacts with Trans Union, which is a third party that Plaintiff claims is domiciled in Pennsylvania. (See generally Doc. No. 18.) However, the Court agrees with Defendant that three cases decided in this district are illustrative precedent on why this Court lacks general jurisdiction over Midland. (See Doc. No. 17 at 7–8.)

First, a corporation suing Pennsylvania residents in an effort to collect unpaid debt does not automatically give a district court in Pennsylvania general jurisdiction over that corporation. While debt collection is a business, engaging in debt collection has not been held to be the kind of

4

contacts that satisfy Daimler's "continuous and systematic" requirement. In this regard, the United States Supreme Court has held that merely doing business in a state does not by itself confer general jurisdiction. See BNSF, 581 U.S. at 414 (holding general jurisdiction was inappropriate over an out-of-state corporation with over 2,000 miles of railroad track and more than 2,000 employees in the forum state). In Greene, a New Jersey resident sued credit reporting agencies and debt collectors headquartered in South Carolina and incorporated in Delaware for allegedly furnishing and publishing inaccurate data about the plaintiff's credit history. Greene, 2022 WL 267587, at *1. Judge McHugh held that although debt collection is a form of doing business, "simply doing business in the state is not enough to prove an exception to the rule that the state of incorporation and the state of headquarters are the primary nexus of general jurisdiction." Id. at *2.

Second, being sued in Pennsylvania does not automatically give a Pennsylvania district court general jurisdiction over a corporation. In White, a New Jersey resident sued credit reporting agencies and a Delaware debt collection company for FCRA violations for furnishing information regarding accounts someone opened in her name without authorization. White v. Trans Union, LLC, No. 2:22-CV-02653-JDW, 2022 WL 6768231, at *2 (E.D. Pa. Oct. 11, 2022). In that case, the plaintiff claimed this Court had general jurisdiction over the nonresident collection company because "each has been sued in Pennsylvania numerous times." Id. Judge Joshua D. Wolson held there was no general jurisdiction over the defendant because "a company does not decide where to defend lawsuits and being haled into court does not render a company at home in a jurisdiction." Id.

Horvei provides another example of why there is no general jurisdiction over Midland here. In that case, a New York resident sued credit reporting agencies and debt collectors, headquartered

in Virginia and incorporated in Delaware, for allegedly furnishing and publishing inaccurate information about Plaintiff's credit history. Horvei v. Trans Union, LLC, No. CV 22-2101, 2022 WL 3588020, at *2 (E.D. Pa. Aug. 22, 2022). Judge McHugh rejected the notion that a defendant company suing residents in a state renders that company at home there because the company's "collection of debts [through lawsuits] against Pennsylvania residents did not give rise to Plaintiff's specific claims." Id.

Finally, a corporation having contacts with a third-party resident of Pennsylvania does not give a Pennsylvania district court general jurisdiction over an out-of-state corporation. Plaintiff describes the nature of Midland's contacts with Trans Union as "inaccurately furnishing credit data to Trans Union in Delaware County, Pennsylvania . . . ." (Doc. No. 18 at 9.) However, Judge Wolson held in White that "contact with a third party [Trans Union] also does not render a company at home." White, 2022 WL 6768231, at *2. In Horvei, Judge McHugh held that "[e]ven if Trans Union's principal office is here . . . and further assuming [the defendants] did substantial business with it, that would still not suffice to create general jurisdiction over [the defendants]."[5] Id. The plaintiff in Greene also claimed that a defendant debt collector's contacts with Trans Union gave this Court personal jurisdiction over the debt collector, and Judge McHugh rejected it for the same reasons stated in Horvei. See Greene, 2022 WL 267587 at *2. In all three cases, just as in this case, the reasoning follows suit with the Supreme Court holdings that doing business in a state—whether it is a party to the case or doing business with a third party—does not confer general jurisdiction.

---

[5] The Court reiterates Judge McHugh's note that public filings show Trans Union is a Delaware company with its principal place of business in Illinois. However, because at this stage of the case the Court must accept Plaintiff's allegations as true, Trans Union's domicile is accepted to be Pennsylvania. See Horvei, 2022 WL 3588020, at *2 n. 3.

B.  **This Court Does Not Have Specific Jurisdiction Over Defendant Midland**

Plaintiff also argues that there is specific jurisdiction because (1) Midland has sued many Pennsylvania residents in efforts to collect unpaid debts; (2) Midland has been sued by many residents of Pennsylvania; and (3) Midland has conducted "numerous cases, transactions, and business-related activities within the Eastern District of Pennsylvania's jurisdiction, including its contacts with Trans Union." (Doc. No. 18 at 10–11.) But this Court lacks specific jurisdiction over Defendant Midland under the three-step analysis outlined by the Third Circuit in Sandy Lane Hotel Co., noted supra, for the reasons below.

1.  **Defendant Midland Purposefully Directed Its Activities at the Forum State But That Alone Is Not Enough to Confer Specific Jurisdiction**

Plaintiff asserts that Midland purposefully directed its activities at Pennsylvania by engaging in debt collection. (See id.) Similar to her arguments above in support of general jurisdiction, Plaintiff avers that Midland "directed its conduct at residents of Pennsylvania [by suing] at least sixty-seven (67) Pennsylvania residents in Bucks County, Pennsylvania . . . [and] at least twenty-two (22) Pennsylvania residents in Montgomery County, Pennsylvania . . . in the past two (2) years for allegedly unpaid debts . . . ." (See id.) Attempting to collect debts, including legal action, is purposefully directing activities to Pennsylvania. Here, as in White, a debt collection company directs activities toward a state by collecting debts from Pennsylvania residents. See White, 2022 WL 6768231, at *2. However, as Judge Wolson held in White, where the claims do not arise from those activities, this is not enough to confer personal jurisdiction. Id. Thus, for reasons discussed below, debt collection in Pennsylvania, without more, does not give this Court personal jurisdiction over Midland.

As to Plaintiff's theory asserted at the November 25, 2024 hearing that Midland's act of transmitting information to Trans Union "triggers" both general and specific jurisdiction over

Midland because this act "generates a new credit report," the Court notes that case law in this District is to the contrary. See White, 2022 WL 6768231, at *2 ("neither [defendant] targeted Pennsylvania when they transmitted the [credit reporting] information. The [defendants] did not control where Trans Union placed its office, and they did not intend that Trans Union would use the information in Pennsylvania."); see also Harris v. Trans Union, LLC, 197 F. Supp. 2d 200, 205 (E.D. Pa. 2002) (no jurisdiction when the defendant mailed a letter to Trans Union in Pennsylvania).

        2.        **The Claims at Issue Did Not Arise Out of Defendant Midland's Contacts With Pennsylvania**

Second, the litigation must arise out of or relate to at least one of those activities. Sandy Lane Hotel Co., 496 F.3d at 317. Here, Plaintiff does not claim that Midland's activity gave rise to her claim. In other words, it was not the debt collection that caused Plaintiff's her deteriorating credit standing and her weakened ability to obtain credit elsewhere, which are the damages alleged in this case. (Compl. at ¶ 24.)

Moreover, Plaintiff is a New Jersey resident, so there is no sense in which Midland's debt collection in Pennsylvania gave rise to her claim. Similarly, in Horvei, the defendant's "collection of debts against Pennsylvania residents did not give rise to the [New York resident plaintiff's] specific claims." Horvei, 2022 WL 3588020, at *2. While the credit reporting claim may generally relate to Midland's debt collection activities, as it did in Horvei, Plaintiff still has failed to establish a connection between the forum and the specific claims at issue. See id.

By way of further example, in Greene, the plaintiff, a New Jersey resident, claimed this Court had specific jurisdiction over a nonresident corporate defendant because of the defendant's debt collecting activities in Pennsylvania. Judge McHugh conceded that the "debt collection activities [of the defendant] are—in a general sense—'related to' the credit reporting claims . . .

8

but [the] plaintiff failed to allege . . . that [the defendant's] purposeful direction of activities toward Pennsylvania [debt collection] gave rise to the specific claims at issue and cannot establish specific jurisdiction over [the New Jersey resident defendant] as to this action." Greene, 2022 WL 267587, at *2.

### 3. Defendant Midland Did Not Have Minimum Contacts With Pennsylvania

Finally, a court must determine whether the defendant established minimum contacts with the forum state. International Shoe, 326 U.S. at 316. Here, Plaintiff asserts Midland established minimum contacts by engaging in debt collection. (See Doc. No. 18 at 10.) As noted above, however, debt collection, including legal actions, while a form of doing business in a state, is not enough to establish the requisite minimum contacts to confer personal jurisdiction. See White, 2022 WL 6768231, at *2; Greene, 2022 WL 267587, at *2; Horvei, 2022 WL 3588020, at *2.

Plaintiff does not assert that if this Court were to exercise personal jurisdiction over Midland it would "offend traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316. But because the Court finds that the second and third prongs of the three-part test are not met here, the Court need not address that issue.

### C. This Case Will Not Be Transferred to the District of New Jersey

Plaintiff does not give this Court any basis on which to transfer this case to the District of New Jersey. Regarding Plaintiff's assertion that "a substantial part of the events or omissions giving rise to the claim, including Plaintiff's injuries, occurred in the District of New Jersey, where the Plaintiff resides," nothing in Plaintiff's memoranda or that was stated at the hearing on November 25, 2024, provides any detail as to what the events or omissions occurred there. (See Doc. No. 18 at 11.) Thus, Judge Wolson's holding in White aptly applies here:

> To support a motion for transfer to cure want of jurisdiction pursuant to 28 U.S.C. § 1631, a plaintiff must make out a prima facie case for personal jurisdiction in that forum to show that the case could have been brought there. See D'Jamoos ex rel.

9

> Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 107 (3d Cir. 2009). Aside from her residence in the forum, nothing in the record or [the plaintiff's] brief makes out any case for why personal jurisdiction over [the defendants] exists in New Jersey. [The plaintiff] made no analysis under § 1631, nor did she provide any argument supporting a change of venue under 28 U.S.C. § 1404(a). The Court therefore has no basis to transfer her claims to New Jersey or any other court.

White, 2022 WL 6768231, at *3.

Furthermore, since Plaintiff gives no account of what events or omissions occurred in New Jersey this Court has no authority to transfer the case under 28 U.S.C. § 1631, which provides that if a "court finds that there is a want of jurisdiction [in the court where the case is filed], the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." As noted, Plaintiff has not demonstrated that this case could have been brought in New Jersey.

Plaintiff also does not contend that transfer is warranted under 28 U.S.C. § 1404(a).[6] Specifically, she does not assert in the memoranda, nor did her counsel assert at the hearing, any examples of why New Jersey would be more convenient for the parties and witnesses, or state reasons for why the case might have been brought there in the first place.

## V. CONCLUSION

For these reasons, Defendant Midland's Motion to Dismiss the Complaint (Doc. No. 17) will be granted. An appropriate Order follows.

---

[6] 28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."